*In re* PEOPLE v BURTON

BURTON v WAYNE COUNTY PROSECUTOR

Docket No. 78267. Argued April 7, 1987 (Calendar No. 2). Decided
    October 6, 1987.

Brian C. Burton was convicted by a jury in the Wayne Circuit
    Court, Patrick J. Duggan, J., of first-degree felony murder,
    armed robbery, and possession of a firearm during the commis-
    sion of a felony. Following the defendant's conviction, the
    deceased victim's wife contacted the prosecutor and indicated
    that her trial testimony was not factually correct. Following a
    motion by the defendant's attorney, the Court of Appeals, R. M.
    MAHER, P.J., and J. H. GILLIS and WAHLS, JJ., ordered the case
    remanded to the trial court to allow the defendant to move for
    a new trial on the issue whether Mrs. DuPuis' disclosure
    constituted newly discovered evidence (Docket No. 85151). After
    a posttrial hearing, the trial court granted a new trial. The
    prosecutor challenged the trial court's order, seeking an order
    of superintending control in the Court of Appeals. The Court of
    Appeals, J. H. GILLIS, P.J., and MARTIN, J. (WAHLS, J., dissent-
    ing), ordered that the complaint for superintending control be
    granted and reversed the trial court's grant of a new trial
    (Docket No. 89435). The defendant appeals.

In an opinion by Justice ARCHER, joined by Justices LEVIN,
    BRICKLEY, and CAVANAGH, the Supreme Court *held:*

The Court of Appeals lacked jurisdiction to issue an order of
    superintending control in this case.

1. The power of superintending control is an extraordinary
    power. By court rule, the Court of Appeals may entertain an
    action for superintending control arising out of an action or
    proceeding which, when concluded, would result in an order
    appealable to the Court of Appeals. Appeals by the people in
    criminal cases are limited by statute, and do not include
    appeals of a trial court's grant of a new trial. An order of

REFERENCES

Am Jur 2d, Courts §§ 98 *et seq.*, 111 *et seq.*

Appeal by state or order granting new trial in criminal case. 95
    ALR3d 596.

superintending control is an improper means of granting review of a matter not provided for by general law.

2. Whether an order of superintending control should issue depends upon the circumstances of a case. Review of a decision of a lower court in response to a complaint for superintending control is discretionary, and the scope is to determine, on the basis of the record, whether the lower court had jurisdiction, whether it exceeded its jurisdiction, and whether it proceeded according to law.

3. In ordering superintending control, the reviewing court is invoking an extraordinary power which should be exercised only in extraordinary circumstances. The circumstances in this case do not warrant such an extraordinary remedy. The proper criteria for issuing such an order have not been shown. The decision whether to grant a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court, and to establish that the court erred a clear abuse of discretion must be shown.

Order of the Court of Appeals vacated and complaint for superintending control dismissed.

Justice BOYLE, joined by Chief Justice RILEY and Justice GRIFFIN, concurring in part and dissenting in part, stated that the right of the people to appeal a decision in a criminal case is specified by MCL 770.12(1); MSA 28.1109(1). An appeal and a writ of superintending control are functionally and conceptually different. An appeal is primarily a device for correcting legal error which occurs in the course of litigation; it protects the interests of the particular litigants as the final stage of the process through which justice is achieved. A writ of superintending control is designed to correct errors so gross as to be almost foreign to the judicial system; it serves the interests of the judicial system as a whole as a device for protecting the system's integrity and furthering its efficiency. Limitations on the scope of review available under a writ of superintending control are consistent with the legislative limitations on the people's right of appeal.

However, such limitations make it imperative that the Court recognize and accept the invitation of the Legislature, under MCL 600.308(2)(d); MSA 27A.308(2)(d), to authorize applications by the people for leave to appeal by promulgating rules enlarging the jurisdiction of the Court of Appeals.

In this case, the writ of superintending control was not properly issued. The discretionary nature of the trial court's determination to grant a new trial does not lend itself to the limited review afforded by an order of superintending control.

SUPERINTENDING CONTROL — COURT OF APPEALS — NEW TRIAL.
> The Court of Appeals may entertain an action for superintending control arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals; appeals by the people in a criminal case are limited by statute and do not include appeals of a trial court's grant of a new trial; thus, an order of superintending control involving such an appeal is an improper means of granting review of a matter not provided for by general law (MCR 7.203(C)(1); MCL 770.12; MSA 28.1109).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, and *Jan J. Raven,* Assistant Prosecuting Attorney, for the plaintiff.

*Daniel J. Blank* for the defendant.

Amicus Curiae:

State Appellate Defender (by *Dawn Van Hoek*).

ARCHER, J. In this case, we must decide whether the Court of Appeals erred in granting an order of superintending control reversing the trial court's order granting a new trial in a criminal case.

We hold that the Court of Appeals lacked jurisdiction to invoke its extraordinary power to issue an order of superintending control in this case; therefore, the Court of Appeals erred in reversing the trial court's order granting a new trial.

I

The defendant, Brian Burton, was arrested and charged in connection with a homicide committed during the armed robbery of a lounge. Following a jury trial, he was convicted on March 21, 1985, of

first-degree felony murder, MCL 750.316; MSA 28.548, armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). The trial judge sentenced Mr. Burton to terms of mandatory life in prison for the felony-murder conviction, fifteen to thirty years for the armed robbery conviction, and to a mandatory two years for the felony-firearm conviction. The defendant filed an appeal as of right in the Court of Appeals.

About four months after the trial, the victim's wife, Mrs. To I DuPuis, contacted the trial prosecutor and indicated that her testimony, which she gave at trial, was not factually correct. Mrs. DuPuis gave a statement to the prosecutor. The prosecutor, shortly thereafter, advised the defendant's attorney by letter of Mrs. DuPuis' disclosure. Following a motion by the defendant's attorney, the Court of Appeals remanded the case to the trial court to allow the defendant to make a motion for a new trial on the issue whether Mrs. DuPuis' disclosure constituted newly discovered evidence. The Court of Appeals retained jurisdiction.

At the posttrial evidentiary hearing, Mrs. DuPuis testified that she was very scared that if she told the prosecutor at trial what happened the night her husband was killed, she probably would be killing all of her family. But after consulting a relative, Mrs. DuPuis contacted a police officer who was in charge of the case. Mrs. DuPuis testified that she was working in the lounge the night her husband was killed. As they were closing, Mrs. DuPuis said that she was turning off the television when she heard two shots. When she went down the hallway, she said that a blond-haired white male wearing a mask and carrying a small gun grabbed her and threw her to the floor. She said

that it seemed as if the man was ready to shoot her. Meanwhile, she said that she heard another voice from the back of the bar say, "Don't do it." Mrs. DuPuis said that the voice was not that of the defendant, but later in her testimony she said that she couldn't recognize the voice.

She testified that the masked man said that if she told anybody that she saw anybody in the bar or heard any voice that he would come back and kill all of her family and blow her head off too. Then she said the blond man with the mask left and she heard a door closing. She went to the back of the bar and found her husband's body. After her husband's death, Mrs. DuPuis said she received two phone calls. Each of the callers repeated the threat of the masked man.

At the defendant's trial, Mrs. DuPuis testified on cross-examination that she saw no one in the back hall of the lounge other than her husband. She also said she did not hear anything in the back hall.

The defendant, who is black, testified at trial that he met three white men and planned with them to steal some beer and liquor from the lounge. But the defendant, a former employee at the lounge, testified that he never entered the bar and never planned or assisted in an armed robbery of Mr. DuPuis. The defendant said he was unaware that the three men were armed with a rifle prior to the time they handed it to him as they left the lounge. He didn't actually participate in stealing the liquor from the lounge, the defendant testified.

The prosecution's theory at trial, on the basis of Mrs. DuPuis' original testimony, was that no one else was involved in the robbery and shooting. However, the defendant argued that the posttrial testimony was consistent with his testimony and

the defense theory that other white individuals were in the bar. The prosecutor argued that the additional testimony did not make a different result probable on retrial because of the overwhelming evidence against the defendant.

During the trial, two police officers testified that they saw the defendant's car in a gas station across the street from the site of the robbery and murder. After watching the car for some time, the officers left, went to a doughnut shop, and came back. The officers said they noticed that the car was leaving the gas station with its lights out at about 2:00 A.M. After stopping the car, the officers approached and saw a rifle on the front seat. After ordering the defendant out, the officers saw money and receipts from the lounge on the floor of the car. The officers then heard a radio message that there had been a shooting at the lounge. The defendant was arrested, and the evidence was admitted at trial. Subsequently, it was determined that the rifle found on the front seat of the defendant's car was the murder weapon. The defendant also had a key to the lounge which he admitted he had stolen.

After hearing the arguments at the posttrial hearing, the trial court granted the defendant's motion for a new trial. The prosecutor challenged the trial court's decision by seeking an order of superintending control in the Court of Appeals. Before the Court of Appeals ruled on the complaint for superintending control, the first panel which had retained jurisdiction during the remand of the case to the trial court dismissed the defendant's appeal as of right, finding that the defendant had received the relief requested at the trial court level. Meanwhile, the second panel considered the prosecutor's complaint for superintending control. On February 19, 1986, the Court of Ap-

peals, in a two-to-one decision, granted the complaint for superintending control and reversed the trial court's decision. The defendant sought leave to appeal, and we granted leave, 425 Mich 872 (1986).

II

In exercising the power of superintending control over a lower court, a reviewing court is invoking an extraordinary power.[1] Under its constitutional power, this Court adopted MCR 7.203(C) which provides the jurisdiction of the Court of Appeals for extraordinary writs, original actions, and enforcement actions. MCR 7.203(C)(1) provides that the Court may entertain an action for "superintending control over a lower court or a tribunal immediately below it arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals." MCR 3.302(C) provides that superintending control is to be used in place of the former writs of certiorari, mandamus, and prohibition. An order of superintending control, comparable to a writ of certiorari, traditionally has been used only to determine "if the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law." *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672; 194 NW2d 693 (1972), quoting *In re Fredericks,* 285 Mich 262; 280 NW2d 464 (1938). The review in such a case is limited only to questions of law.

---

[1] *In re Huff,* 352 Mich 402; 91 NW2d 613 (1958); *Will v United States,* 389 US 90; 88 S Ct 269; 19 L Ed 2d 305 (1967). See, generally, 3 LaFave & Israel, Criminal Procedure, § 26.4, pp 223-231. For a discussion of writs of mandamus in federal courts see note, *Supervisory and advisory mandamus under the all writs act,* 86 Harv L R 595 (1973).

The trial court, after hearing the testimony of the witness at the posttrial evidentiary hearing, granted the defendant's motion for a new trial. The trial court determined that the new testimony of the victim's wife gave some support to the defendant's theory and to his testimony at trial. Therefore, the trial court exercised its discretion and granted a new trial.

The issue is whether the Court of Appeals had jurisdiction to invoke its extraordinary power in this case.

Although a complaint for superintending control is characterized as a separate civil action,[2] our consideration in this case is influenced by the fact that a criminal prosecution is the underlying proceeding. Therefore, we must consider the statutory issues and policies which apply in a criminal prosecution.

Appeals by the people in criminal cases are limited in this state by statute.[3] In *People v Cooke,*

---

[2] *People v Flint Municipal Judge,* 383 Mich 429; 175 NW2d 750 (1970). See also *People v Flint Municipal Judge,* 41 Mich App 766; 201 NW2d 111 (1972).

[3] MCL 770.12; MSA 28.1109 provides in pertinent part:

(1) An appeal may be taken by and on behalf of the people of this state from a court of record in all criminal cases, in any of the following instances:

(a) From a decision or judgment quashing or setting aside an indictment, information, or other charging instrument, or a count thereof, where that decision or judgment is based upon the invalidity or construction of the statute upon which the indictment, information, or other charging instrument is founded.

(b) From a decision arresting a judgment of conviction or directing a judgment of acquittal for insufficiency of the indictment, information, or other charging instrument, where the decision is based upon the invalidity or construction of the statute upon which the indictment, information, or other charging instrument is founded.

(c) From a decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy, or from another order of the court relative to admission of evidence or proceedings had or made before the defendant is put in jeopardy.

419 Mich 420; 355 NW2d 88 (1984), the Court held that the people do not have a right of appeal outside the express provisions of the Code of Criminal Procedure, MCL 770.12; MSA 28.1109. The statute does not provide for an appeal by the people of a trial court's decision to grant a new trial in a criminal case. MCL 770.12; MSA 28.1109. See also *People v Hinerman,* 420 Mich 851 (1984).

The defendant and amicus curiae argue that this Court should not permit the use of superintending control by the people to be employed as a substitute for a direct appeal.

The defendant argues that this use of superintending control circumvents the Court's ruling in *Cooke* and the statute, resulting in attempts to expand prosecution appeals in the absence of legislative authorization.

The people argue that a complaint for an order of superintending control is an original, civil action. *People v Flint Municipal Judge,* 383 Mich 429; 175 NW2d 750 (1970). The Court of Appeals obtains its authority to issue such an order through the court rules. The only limit as to whether a complaint for superintending control can be filed is that an appeal must be unavailable to the party seeking the order. MCR 3.302(D)(2). The people argue that the decision in *People v Cooke, supra,* makes clear that the Court of Appeals has the ability to hear such a complaint and that an order of superintending control is the appropriate method of review. A complaint for superintending control may be filed unfettered by the limits on the people's right to appeal contained in MCL 770.12; MSA 28.1109, the people argue, since neither the statutes nor the holding in *Peo-*

*ple v Cooke, supra,* are applicable in this case, it being an original action and not an appeal.

The Legislature has limited the types of cases that the prosecution may appeal in the Court of Appeals. If an order of superintending control were available to review the grant of a new trial, as in this case, the limits the Legislature placed on appeals by the people would be ignored. Issuing an order of superintending control is an improper means of granting appellate review when an appeal is not provided for by general law. An order of superintending control should not be issued to circumvent the will of the Legislature and provide appellate review which is unauthorized by the Legislature.

In addition, MCR 7.203(C)(1) provides that the Court of Appeals "may entertain an action for . . . superintending control . . . arising out of an action or proceeding which, when concluded, would result in an order appealable to the Court of Appeals." Under both *Cooke, supra,* and the statute limiting prosecutor appeals, an order granting a new trial to a defendant in a criminal case would not be appealable.

We reject the suggestion that where an appeal is unavailable, an order of superintending control is always available. Whether an order of superintending control should issue depends upon the circumstances in the specific case. When the people seek review of a lower court decision by filing a complaint for superintending control such review is discretionary, and the scope of review is to determine, on the record made, whether the lower court "had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law." *Genesee Prosecutor, supra,* p 681. In this case, the proper criteria for issuing an order of superintending control have not been shown, even though an

order of superintending control is generally within
the jurisdiction of the Court of Appeals.[4] In addi-
tion, the trial judge's order did not have the effect
of a dismissal.

The defendant argues that cases involving re-
view by superintending control of a magistrate's
decision whether to bind over a defendant in a
criminal case are inapposite. In *People v Flint
Municipal Judge, supra,* this Court permitted the
use of superintending control as a means of re-
viewing the discretionary decision of a magistrate.
However, the decision is not controlling, the defen-
dant argues, because a municipal court's decision
is outside the scope of the prosecution appeal
statute since it did not involve a court of record.

The prosecutor argues that in *People v Flint
Municipal Judge, supra,* the Court held that re-
view of the discretionary decision of the examining
magistrate was available to the people through a
complaint for superintending control filed in the
circuit court.

Despite the decision in *People v Flint Municipal
Judge, supra,* we find the result is distinguishable
because the trial judge's order in this case did not
have the effect of a dismissal. Also, *Wayne Co
Prosecutor v Recorder's Court Judge,* 151 Mich
App 550; 391 NW2d 407 (1986), is distinguishable

---

[4] Const 1963, art 6, § 10 provides:

> The jurisdiction of the court of appeals shall be provided by
> law and the practice and procedure therein shall be prescribed
> by rules of the supreme court.

Also, see MCL 600.310; MSA 27A.310, which provides:

> The court of appeals has original jurisdiction to issue prerog-
> ative and remedial writs or orders as provided by rules of the
> supreme court, and has authority to issue any writs, directives
> and mandates that it judges necessary and expedient to effectu-
> ate its determination of cases brought before it.

on the facts because the Court was reviewing a clear error of law.[5]

When a reviewing court issues an order of superintending control, the reviewing court is invoking an extraordinary power. Such an extraordinary power should only be exercised in extraordinary circumstances when the prosecutor seeks an order of superintending control. The circumstances in this case do not warrant such an extraordinary remedy.

The decision whether to grant a new trial on the basis of newly discovered evidence is within the sound discretion of the trial court. *People v Pizzino,* 313 Mich 97; 20 NW2d 824 (1945). To establish that the court has erred, a clear abuse of discretion must be shown. This Court's standard of review in testing for an abuse of discretion was stated in *Spalding v Spalding,* 355 Mich 382; 94 NW2d 810 (1959), and was given a stricter interpretation in the criminal context in *People v Charles O Williams,* 386 Mich 565, 573; 194 NW2d 337 (1972). See also *Langnes v Green,* 282 US 531, 541; 51 S Ct 243; 75 L Ed 520 (1931).

An order of superintending control is not warranted in this case. Therefore, the order of the Court of Appeals is vacated and the complaint for superintending control is dismissed.

LEVIN, BRICKLEY, and CAVANAGH, JJ., concurred with ARCHER, J.

BOYLE, J. (*concurring*). This Court has held that

---

[5] In *Wayne Co Prosecutor,* p 554, the Court stated:

> Were we asked to review the trial court's exercise of discretion in the case at bar, we would be inclined to dismiss the complaint for superintending control.

However, the Court explained that it was reviewing an issue that was a clear error of law.

the right of the people to appeal to the Court of Appeals is limited by statute to those situations explicitly set forth in MCL 770.12(1)(a), (b), and (c); MSA 28.1109(1)(a), (b), and (c).[1] *People v Cooke,* 419 Mich 420, 430; 355 NW2d 88 (1984). In apparent response to this decision the prosecution sought and was granted a writ of superintending control, vacating the trial court's grant of a motion for new trial. I agree that the writ was not properly issued in this case. I write separately to note that the combined effect of *People v Cooke* and today's decision is to insulate all but the most egregious error from review at the request of the people.[2]

[1] The United States Supreme Court, in an analogous context, has also declined to permit an appeal by the government in the absence of specific congressional authorization. *United States v Sanges,* 144 US 310; 12 S Ct 609; 36 L Ed 445 (1892). See also *Carroll v United States,* 354 US 394; 77 S Ct 1332; 1 L Ed 2d 1442 (1957). In 1970, Congress declared the government's right to appeal from orders dismissing an indictment or information except where the Double Jeopardy Clause prohibits further prosecution. 18 USC 3731. In the wake of *Cooke,* a bill has been introduced and is pending in the Michigan Legislature which would amend § 12 of the Code of Criminal Procedure to reflect the federal statute. HB 4719, 1987 Journal of the House 1483 (No. 53, June 2, 1987).

In addition, in the final report of the Citizens' Commission to Improve Michigan Courts, a recommendation was made to "[e]xtend the prosecuting attorney's right to appeal decisions other than acquittals." Final Report of the Citizens' Commission to Improve Michigan Courts, p 16. In the words of the commission:

> We are also concerned about the limitations presently placed upon the prosecuting attorneys' right to appeal. The prosecutor is the attorney who represents "the People," and the prosecutor's duty is to seek justice, not merely convictions. Where the prosecutor believes that a trial court has committed an error of law, an appeal should be available. Of course, no prosecutor could ever be permitted to appeal an acquittal, but the People's attorney should have access to the appellate courts on approximately the same terms as a defense attorney. [*Id.*]

[2] In *Cooke,* the Court construed § (1)(c) of the statute allowing prosecutor appeals "[f]rom a decision or judgment sustaining a special plea in bar, when the defendant has not been put in jeopardy" as permitting appeals only where the jury had not been sworn. This Court thus viewed the statute in a more restrictive manner than the

An appeal and a writ of superintending control are, functionally and conceptually, different. An appeal is primarily a device for correcting legal error which occurs in the course of litigation. A writ of superintending control, on the other hand, is "designed to correct errors so gross as to be almost foreign to the judicial system." Note, *Supervisory and advisory mandamus under the all writs act,* 86 Harv L R 595, 626 (1973). The former primarily protects the interests of the particular litigants as the final stage of the process through which justice is achieved. The latter serves the interests of the judicial system as a whole as a device for protecting the system's integrity and furthering its efficiency. *Id.,* 626-627.[3]

Limitations on the scope of review available by way of a writ of superintending control stem from a concern that expansive review would be inconsistent with legislative limitations on the prosecution's right to appeal. Use of the writ to review excesses of jurisdiction, however, was recognized in the courts long before the government was given a right to appeal and was never thought to be inconsistent with statutory provisions limiting appeals in civil or criminal cases. 3 LaFave & Israel, Criminal Procedure, § 26.4, pp 238-239. As the authors of one leading treatise reason:

United States Supreme Court did in declining appeals by the government, absent congressional authorization. Under 18 USC 3731, the test for determining whether the principles of double jeopardy would bar further prosecution is not "when double jeopardy attaches." The defendant's conviction in *Cooke* which was reversed as the result of a directed verdict after the jury had found him guilty, could, under the federal definition of jeopardy, be reinstated on appeal by the government because reinstatement of the conviction would not allow reprosecution of the defendant for the same offense. *United States v Wilson,* 420 US 332; 95 S Ct 1013; 43 L Ed 2d 232 (1975).

[3] See also *Genesee Prosecutor v Genesee Circuit Judge,* 386 Mich 672, 680; 194 NW2d 693 (1972), quoting *People v Flint Municipal Judge,* 383 Mich 429, 432; 175 NW2d 750 (1970) ("The process is not, properly speaking, an appeal. It is rather a whole new lawsuit, with different parties and different purposes").

"In limiting the government's right to appeal,
Congress has made it clear that the government
cannot complain of ordinary trial errors. It must
submit to the decisions of the frailest judge. But
Congress cannot have intended that the Govern-
ment be obliged to submit to arbitrary judges who
refuse to behave as judges. The 'jurisdiction' of the
courts of appeals, as that term is used in § 1651,
must include the power of the courts of appeals to
insure that its district courts are in fact courts and
not schools of solipsism." [*Id.*, p 239, quoting 9
Moore, Ward & Lucas, Moore's Federal Practice
(2d ed), ¶ 110.28, pp 305-306.]

This Court is not unique in recognizing that the
writ will lie in criminal cases to review excesses of
jurisdiction and to compel the performance of a
clear legal duty.[4] *Genesee Prosecutor v Genesee
Circuit Judge,* 386 Mich 672, 681; 194 NW2d 693
(1972). Hence, the vital corrective and didactive
function of the writ may be required even in a
criminal case and at the urging of the prosecution.
See also *Will v United States,* 389 US 90, 97-98; 88
S Ct 269; 19 L Ed 2d 305 (1967).[5]

I agree with the majority that it is appropriate

[4] *People v Flint Municipal Judge,* n 3 *supra,* 431 (superintending
control, like mandamus, lies to review the discretion of an examining
magistrate and to require the magistrate to perform a function where
the magistrate has a clear legal duty to act); *Genesee Prosecutor v
Genesee Circuit Judge,* n 3 *supra* (superintending control is proper for
the purpose of determining whether a circuit judge acted without
authority in accepting, over the objection of the prosecutor, a guilty
plea to an offense not charged by the people or included within the
offense charged); *People v Rehkopf,* 422 Mich 198; 370 NW2d 296
(1985) (superintending control will lie to review a lower court's
decision invalidating a statute); see also *People v Gebarowski,* 47
Mich App 379; 209 NW2d 543 (1973).

[5] In *Will, supra,* the United States Supreme Court recognized that
in criminal cases, mandamus has been invoked successfully "where
the action of the trial court totally deprived the Government of its
right to initiate a prosecution, *Ex parte United States,* 287 US 241 [53
S Ct 129; 77 L Ed 283] (1932), and where the court overreached its
judicial power to deny the Government the rightful fruits of a valid

to prevent expansion of the use of superintending control as a substitute for appeal. I write separately, not to disagree with Justice ARCHER and my colleagues, but simply to observe that it would be neither wise nor appropriate to impermissibly confine the Court of Appeals ability to take corrective action which, in the exercise of discretion, it concludes is necessary. To do so is to eliminate an important check on the accuracy of trial court decisions. The state no less than the defendant has a compelling interest in the correct application of the law.

In my view, therefore, the majority's correct construction of the limited scope of the writ together with the limitations on appeals set forth in *Cooke, supra,* make it imperative that this Court recognize and accept the invitation of the Legislature to authorize applications for leave to appeal at the request of the prosecution. The Legislature specifically provides:

> The court of appeals has jurisdiction on appeal from the following orders and judgments which shall be reviewable only upon application for leave to appeal granted by the court of appeals:
>
> * * *
>
> (d) Such other judgments or interlocutory orders as the supreme court may by rule determine. [MCL 600.308(2)(d); MSA 27A.308(2)(d).]

The Legislature reenacted this provision granting this Court rule-making authority in 1981, three years after the "limiting provisions of § 12 of the Code of Criminal Procedure . . . ." *People v Cooke, supra,* 427. This Court should, in candor, recognize that the Legislature has reaffirmed our

conviction, *Ex parte United States,* 242 US 27 [37 S Ct 72; 61 L Ed 129] (1916)."

authority to promulgate rules with regard to appeals by leave that may enlarge the jurisdiction of the Court of Appeals. See note to Proposed MCR 7.203, 428A Mich 9, 11 (1987).

There is no legislative obstacle preventing this Court from promulgating rules enlarging the jurisdiction of the Court of Appeals and authorizing prosecutor appeals by leave. In recognition of this premise, the Criminal Procedure Rules Committee has proposed an amendment of MCR 7.203(B) which would provide an appeal by leave "to any aggrieved party, including the people in a criminal case when the protection against double jeopardy would not bar further proceedings against the defendant . . . ." Proposed MCR 7.203(B), 428A Mich 9 (1987).

It is fully consistent with the legislative intent and this Court's decision in *Cooke* to create a right in the prosecution to seek leave to appeal where jeopardy would not be offended. See note to Proposed MCR 7.203(B), *supra*, 11. Our affirmative response to this invitation would provide an avenue by which the Court of Appeals could correct serious trial error. It would also allow the public a voice in the appellate process, a voice which has been effectively silenced by the combined effect of *Cooke* and today's opinion. While the Court should, as always, pay heed to opposing views in the rule-making process,[6] neither side of a case has a "legitimate interest in immunizing legal errors from correction." Note to Proposed Criminal Rule MCR 7.203, *supra*, 10.

Turning to the case at bar, review of the order granting a new trial arguably would have been available previously only under a writ of certiorari. The writ of certiorari was for review of errors

---

[6] The Proposed Rules of Criminal Procedure have been published for comment, and the comment period has not expired.

of law and was limited to the inquiry whether "the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law." *Genesee Prosecutor v Genesee Circuit Judge, supra,* 681.

I agree with the majority that the discretionary nature of the trial court's determination to grant a new trial on the basis of newly discovered evidence does not lend itself to the limited review afforded by an order of superintending control viewed in the nature of a writ of certiorari.[7]

RILEY, C.J., and GRIFFIN, J., concurred with BOYLE, J.

---

[7] The new trial order in this situation is clearly not a final order. Compare this situation, however, to one in which the order is based on a ruling suppressing evidence that is appealable prior to trial. In the latter situation, an exception to the rule barring a government appeal from an order granting a new trial would be justified. LaFave & Israel, *supra,* 221.