*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re CLARK COMMONS LIMITED DIVIDEND
HOUSING ASSOCIATION, LLC and
PREMIER PROPERTY MANAGEMENT, LLC

UNPUBLISHED
December 09, 2025
2:49 PM

CLARK COMMONS LIMITED DIVIDEND
HOUSING ASSOCIATION, LLC and
PREMIER PROPERTY MANAGEMENT, LLC,

        Petitioners-Appellants,

v

No. 371839
Genesee Circuit Court
LC No. 24-120286-AS

HON. HERMAN S. MARABLE, JR.,

        Respondent-Appellee.

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

PER CURIAM.

Petitioners appeal by right the trial court's order granting respondent's motion for summary disposition and dismissing petitioners' complaint for superintending control. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Petitioner Clark Commons Limited Dividend Housing Association, LLC is the owner and operator of a multi-family housing development, while Petitioner Premier Property Management, LLC is a property management company that manages the property of a number of owners of multi-family housing developments. Respondent is a sitting 67th District Court judge.

In 2024, petitioners filed a complaint for superintending control in the trial court, alleging that respondent had failed to comply with the law or court rules in several ways during summary eviction proceedings initiated by petitioners. Specifically, petitioners alleged that respondent (1) had failed to enter default judgments at certain hearings when a tenant failed to appear, (2) had a pattern and practice of refusing to enforce conditional dismissal orders that he himself had signed, (3) had unreasonably delayed signing orders of eviction in several cases, and had set hearings

before signing them, despite the court rules not requiring a hearing, (4) frequently adjourned eviction hearings and other proceedings to the benefit of tenants and without good cause, (5) frequently asked petitioners questions at hearings that "surprised" petitioners and "use[d] their failure to respond to his liking as a basis for further adjournment," and (6) failed to adequately control the scheduling of his docket, causing some cases to be delayed. Petitioners alleged in their complaint that respondent's actions were "intentionally designed to harm landlords to the benefit of tenant defendants."

In response, respondent moved for summary disposition under MCR 2.116(C)(3), (4), (5), (8), and (10). After a hearing, the trial court granted respondent's motion, holding that respondent was entitled to summary disposition under MCR 2.116(C)(4) (lack of subject matter jurisdiction) because an adequate legal remedy, see MCR 3.302(B), for petitioners' complaints existed. Petitioners moved for reconsideration, which the trial court denied. This appeal followed.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's decision to grant or deny a request for superintending control. *In re Grant*, 250 Mich App 13, 14; 645 NW2d 79 (2002). However, we review de novo as a question of law whether a respondent has a clear legal duty to perform and whether a petitioner has a clear legal right to the performance of any such duty. *Adams v Parole Bd*, 340 Mich App 251, 258; 985 NW2d 251 (2022). We review de novo a trial court's decision on a motion for summary disposition. *Moser v Detroit*, 284 Mich App 536, 538; 772 NW2d 823 (2009). We also review de novo issues involving the interpretation of statutes and court rules. *Grand Rapids v Brookstone Capital, LLC*, 334 Mich App 452, 457; 965 NW2d 232 (2020).

## III. ANALYSIS

Petitioners argue that the trial court erred by determining that an adequate legal remedy existed for their claims and accordingly by dismissing their complaint for superintending control. Although we agree that the trial court erred by determining that it lacked subject-matter jurisdiction, we nonetheless affirm the trial court's grant of respondent's motion for summary disposition and the dismissal of petitioners' complaint for superintending control.

"The writ of superintending control supersedes the writs of certiorari, mandamus, and prohibition, and provides one simplified procedure for reviewing or supervising a lower court or tribunal's actions." *Shepherd Montessori Center Milan v Ann Arbor Charter Twp*, 259 Mich App 315, 346-347; 675 NW2d 271 (2003). "The filing of a complaint for superintending control is not an appeal, but, rather, is an original civil action designed to order a lower court to perform a legal duty." *Id.* "When a reviewing court issues an order of superintending control, the reviewing court is invoking an extraordinary power. Such an extraordinary power should only be exercised in extraordinary circumstances[.]" *People v Burton*, 429 Mich 133, 144; 413 NW2d 413 (1987). Superintending control is an extraordinary power that may only be invoked when the plaintiff has no adequate legal remedy and the lower court has failed to perform a clear legal duty. *Shepherd Montessori Center Milan*, 259 Mich app at 347; see also *In re Gosnell*, 234 Mich App 326, 341; 594 NW2d 90 (1999).

The availability of an appeal generally requires that a complaint for superintending control must be dismissed. See *Gosnell*, 234 Mich App at 341; *Shepherd Montessori Center Milan*, 259 Mich App at 347; *Choe v Flint Charter Twp*, 240 Mich App 662, 667; 615 NW2d 739 (2000); see also MCR 3.302(D)(2). However, a party may lack an adequate legal remedy when challenging the general policies and procedures of a lower court. *Gosnell*, 234 Mich App at 341-342. "A clear legal duty, like a clear legal right, is one that is inferable as a matter of law from uncontroverted facts regardless of the difficulty of the legal question to be decided." *Adams*, 340 Mich App at 260. A clear legal duty is generally one that is ministerial in nature, rather than discretionary. See *Barrow v Wayne Co Bd of Canvassers*, 341 Mich App 473, 483-484; 991 NW2d 610 (2022). A ministerial duty is one that the law "prescribes and defines . . . with such precision and certainty as to leave nothing to exercise of discretion or judgment." *Berry v Garrett*, 316 Mich App 37, 42; 890 NW2d 882 (2016). The party seeking an order of superintending control "bears the burden of establishing the grounds for issuing the order." *Gosnell*, 234 Mich App at 342. An order of superintending control should not issue "where the petitioner seeks to employ the court's power to superintend as a substitute for an appeal or to evade a statutory prohibition of an appeal." *Public Health Dep't v Rivergate Manor*, 452 Mich 495, 518; 550 NW2d 515 (1996).

MCR 3.302 governs orders of superintending control, and provides in relevant part:

> **(B) Policy Concerning Use.** If another adequate remedy is available to the party seeking the order, a complaint for superintending control may not be filed. See subrule (D)(2) and MCR 7.306(A).

> \* \* \*

> **(D) Jurisdiction**

> (1) The Supreme Court, the Court of Appeals, and the circuit court have jurisdiction to issue superintending control orders to lower courts or tribunals.

> (2) When an appeal in the Supreme Court, the Court of Appeals, or the circuit court is available, that method of review must be used. If superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed.

At the outset, we conclude that petitioners are correct that the trial court erred by granting respondent's motion under MCR 2.116(C)(4) (lack of subject-matter jurisdiction). In discussing MCR 3.302(D)'s predecessor, GCR 711.4 (which contained identical language to MCR 3.302(D)), our Supreme Court stated that the provision indicating that a complaint for superintending control must be dismissed is not jurisdictional in nature; that is, the availability of an appeal does not deprive a court of the subject-matter jurisdiction to issue an order of superintending control; rather, the subrule is "a procedural requirement to be met before relief can be granted." *In re Hague*, 412 Mich 532, 546-547; 315 NW2d 524 (1982). In *Hague*, our Supreme Court adopted the recommendation of the Judicial Tenure Commission (JTC) holding that the respondent judge was guilty of misconduct by, among other actions, refusing to follow several orders of superintending control issued by a higher court, related to his "wholesale dismissal" of "virtually all the prostitution cases being brought to the court." *Id.* at 540, 543. The respondent judge argued that

-3-

the circuit court had been without jurisdiction to issue the order of superintending control, due to the availability of an appeal; our Supreme Court rejected that argument for the reasons stated. *Id.* at 546-547. The Court also noted that the "availability of an appeal in the individual case does not preclude superintending relief when that procedure does not provide an adequate remedy." *Id.* at 546.

There is no reason that *Hague*'s rationale should not apply to MCR 3.302(D). The trial court accordingly erred by granting respondent's motion for summary disposition under MCR 2.116(C)(4). However, respondent moved for summary disposition on several grounds, including that no genuine issue of material fact existed such that respondent was entitled to judgment as a matter of law. MCR 2.116(C)(10). Even if a trial court errs by granting summary disposition under the wrong subrule, this Court may review the matter under the correct subrule, and may affirm the trial court if the correct result was reached for the wrong reason. *Computer Network, Inc v AM General Corp*, 265 Mich App 309, 313; 696 NW2d 49 (2005). Because the trial court did not err by holding that an adequate legal remedy existed (such that petitioners' claim for superintending control was properly dismissed on that basis), the trial court's error was harmless.

In this case, as stated, petitioners alleged in their complaint that respondent violated his clear legal duty in several ways. Generally speaking, petitioners' allegations involved respondent either refusing to sign or unnecessarily delaying the signing of eviction orders, setting hearings that were not required by law or court rule, failing to control his docket so that cases proceeded in a timely manner, refusing to enter default judgments, questioning petitioners about what action they had taken to verify that tenants had actually vacated the property, and adjourning cases without good cause. Petitioners also alleged that respondent's actions were intentional and demonstrated a bias in favor of tenant defendants or against landlord litigants.

Although the trial court dismissed petitioners' complaint on the grounds that an adequate legal remedy was available, we note that many of petitioners' complaints, if true, do not appear to indicate that respondent violated a clear legal duty. See *Gosnell*, 234 Mich App at 341. As noted, a clear legal duty is generally one that is ministerial in nature, rather than discretionary. See *Barrow*, 341 Mich App at 483-484. Yet, many of petitioners' allegations against respondent concern discretionary tasks, such as the scheduling of hearings that petitioners deem unnecessary, or the adjournment of hearings that petitioners feel was unwarranted. Petitioners also allege that respondent asked them whether they had taken affirmative steps to verify whether a tenant had vacated a premises, even though petitioners believe they owe no duty to take such steps under the relevant court rules and statutes. These allegations seem to be based on discretionary, rather than ministerial, acts by respondent; we are not convinced that respondent owed petitioners a clear legal duty to, for example, refrain from asking them certain questions when they appear before him, or to schedule or refrain from scheduling hearings in a manner that best suits them. And while petitioners frequently point out that our court rules and statutes did not *require* respondent to hold or adjourn a hearing, or *require* petitioners to undertake certain actions to verify whether a tenant is in fact still living in a property before issuing an order evicting that tenant, the court rules and relevant statutes do not *forbid* such actions. *Barrow*, 341 Mich App at 483-484. A trial court has the inherent power to control its own docket. *Baynesan v Wayne State University*, 316 Mich App 643, 651; 894 NW2d 102 (2016). A trial court also possesses the inherent authority to control its courtroom, including control over order and the manner in which those who appear before it are

-4-

questioned, see *People v Johnson*, 315 Mich App 163, 177; 889 NW2d 513 (2016). The exercise of that inherent power may only be disturbed "upon a finding that there has been a clear abuse of discretion." *Baynesan*, 316 Mich App 651. Regarding these allegations, therefore, the trial court could have granted respondent's motion for summary disposition on the grounds that petitioners had not demonstrated that respondent violated a clear legal duty. *Gosnell*, 234 Mich App at 341.

Some of petitioners' allegations, such as the allegation that respondent makes a practice of unaccountably delaying signing default judgments or eviction orders, concern more ministerial acts that are prescribed by our court rules. See, e.g., MCR 4.201(M)(2). And some of these allegations do concern conduct for which an appeal is not legally or practically available, although we note that petitioners have not shown that they even attempted to avail themselves of the appellate process in the example cases cited in their complaint and brief on appeal. But even assuming that petitioners did not have an appeal available with respect to certain challenged conduct, petitioners still had an adequate remedy at law to address their complaints against respondent. The JTC is empowered by the Michigan constitution to recommend that our Supreme Court "censure, suspend with or without salary, retire or remove a judge for . . . misconduct in office, persistent failure to perform his duties, habitual intemperance or conduct that is clearly prejudicial to the administration of justice." Const 1963, art 6, § 30; see also MCR 9.211(A). To that end, our court rules provide the JTC with the power to investigate complaints against judges, take evidence, issue subpoenas, hold hearings, and institute formal proceedings against a judicial respondent, including a trial; the JTC is also empowered to make dismissal of a grievance contingent on respondent satisfying conditions imposed by the commission, including successful completion of a monitoring period. MCR 9.223.

It is clear that the JTC has significant power to address judicial misconduct. Judicial misconduct includes "persistent incompetence in the performance of judicial duties," "persistent neglect in the timely performance of judicial duties," and "persistent failure to treat persons fairly and courteously." MCR 9.202(B)(1). The JTC is also empowered to address "conduct in violation of the Code of Judicial Conduct or the Rules of Professional Conduct." MCR 9.202(B)(2). The Code of Judicial Conduct requires a judge to "be faithful to the law and maintain professional competence in it," and "dispose promptly of the business of the court," Code of Judicial Conduct, Canon 3(A)(1) (6), as well as raise the issue of disqualification whenever the judge has cause to believe that grounds for disqualification may exist, Canon 3(C). Grounds for disqualification include bias or the appearance of bias for or against a party. MCR 2.003(C)(1).[1]

Petitioners' complaints against respondent, if true, could easily fall into several of the categories listed above. Many of them involve the accusation that respondent regularly fails to timely perform his duties, or imposes requirements on certain litigants that are not mandated by statute or court rule. In general, petitioners have alleged that respondent has engaged in a pattern of behavior that demonstrated bias against either them in particular or landlord litigants in general, and demonstrated bias in favor of tenant defendants. Petitioners do not explain why the availability of a complaint to the JTC against respondent, which could lead to respondent's censure, suspension

---

[1] We note that it does not appear that petitioners ever sought respondent's disqualification in their cases before him, as our court rules permit. See MCR 2.003(B).

or termination as well as corrective action to address the challenged conduct, is an inadequate remedy; rather, they merely argue that holding that an adequate remedy at law existed in this case would send us down a slippery slope where "no person could seek to correct a judge's misconduct through a superintending control complaint" because of the availability of a JTC complaint. Besides being hyperbolic, petitioners' argument is illogical—the availability of an alternate legal remedy *does* preclude the "extraordinary relief" of superintending control; therefore, if in fact complaints of judicial misconduct are generally, or even always, resolvable by an alternative method rather than by an order of superintending control, that is not a fault that must be corrected, but rather merely a class of complaints that are not remediable by the extraordinary relief of superintending control. *Burton*, 429 Mich at 144.

But we need not establish such a bright line rule today to conclude that the relief petitioners sought in the form of an order of superintending control was not available. Petitioners argue that they seek to challenge a general practice of an inferior court, and argue that, as in *Hague*, a "case-by-case appeal was neither an adequate nor realistic remedy." *Hague*, 412 Mich at 532. But in *Hague*, the respondent judge had dismissed "hundreds" of prostitution and gun-control cases as soon as they were filed, and continued to do so after being ordered to stop by several higher courts. See *id.* at 562-564. Moreover, while our Supreme Court did opine that the orders for superintending control were validly issued inasmuch as the appellate process was not an adequate remedy, it also noted that the respondent judge was required to follow the orders of superintending control *unless the superior court had lacked the jurisdiction to issue them*, even if the orders were "clearly incorrect." See *id.* at 545. Additionally, *Hague* itself was a judicial disciplinary proceeding arising out of a complaint from the JTC. See *id.* at 539. *Hague* does not aid petitioners in arguing that no adequate remedy could be found for their complaints through a JTC complaint; in fact, the complained-of judicial conduct in *Hague* was considerably more "wholesale," involving "dozens upon dozens" of cases dismissed without legal justification. See *id.* at 547-551.

In contrast with *Hague*, in this case petitioners have identified certain actions taken by respondent in some eviction cases, many of which did ultimately resolve in the favor of the landlord litigant, that they feel violated Michigan law or court rules, and demonstrated a bias in favor of tenant defendants and against landlord litigants. Petitioners' complaints can be resolved without resorting to the extraordinary relief of an order of superintending control. *Burton*, 429 Mich at 144. Accordingly, we affirm the trial court's grant of summary disposition to respondent and the dismissal of petitioners' claim for superintending control.

Affirmed.

/s/ Christopher P. Yates
/s/ Mark T. Boonstra
/s/ Adrienne N. Young

-6-