BENNINGTON TOWNSHIP v MAPLE RIVER INTER-COUNTY
DRAIN BOARD

Docket No. 84948. Submitted January 21, 1986, at Lansing.—Decided
March 3, 1986.

Sometime in late 1967 or early 1968, petitions were filed with the
drain commissioners of Shiawassee, Clinton and Gratiot coun-
ties requesting that an intercounty drain be established in
those counties along the Maple River. The Maple River Inter-
County Drain Board was formed, composed of the drain com-
missioners of the three counties. On June 26, 1968, the newly
formed board entered a first order of determination apportion-
ing the cost of the drain project among the three counties. The
drain board and the Michigan Department of Agriculture de-
cided to apply for assistance from the federal government for
the drain project. Over the years, the association with the
federal government led to an expansion of the project and the
resulting projected cost of the project. In 1981, because of these
ballooning cost projections, the drain board and Department of
Agriculture decided to abandon the project which had been
developed in conjunction with the federal government and
attempt to build a scaled-down version financed with local
funds only. In November, 1982, Bennington Township brought
a class action in Shiawassee Circuit Court against the Maple
River Inter-County Drain Board and the Michigan Department
of Agriculture, alleging that, because of various violations of
the Drain Code and because of an abuse of discretion by the
defendants in the administration of the project, the project
should be deemed to have been abandoned. Defendants moved
for summary judgment on the basis that there existed no
disputed questions of material fact and that they were entitled
to judgment as a matter of law. The trial court, Stanley J.

REFERENCES

Am Jur 2d, Drains and Drainage Districts §§ 31-37.
Am Jur 2d, Equity §§ 152 *et seq.*
Am Jur 2d, Pleading §§ 230-237.
See the annotations in the ALR3d/4th Quick Index under Drains
and Drainage; Laches.

Latreille, J., granted defendants' motion. Plaintiff appealed.
*Held:*

1. If the petitions for the subject drain were filed in late 1967 rather than early 1968, the petitions, and the drain project itself, would have been automatically deemed abandoned in late 1972 pursuant to the provision in the Drain Code prior to its 1973 amendment which provided that, if contracts for the drain were not let within five years of the filing of the petitions, the petitions would be deemed abandoned. Since there was a disputed question of fact as to when the petitions for the subject drain were filed, it was error for the trial court to grant summary judgment in favor of defendants as to that claim.

2. Under these circumstances, it cannot be said that plaintiff was guilty of laches in waiting until 1982 to raise its claim that the drain board was without jurisdiction to proceed with construction of the drain.

3. The failure of the drain commissioners to endeavor to secure releases for rights of way for the drain within 60 days of the entry of the first order of determination does not mandate termination of the drain project.

4. There were disputed questions of fact as to whether the defendants abused their discretion in the administration of the project. Accordingly, the trial court erred in granting summary judgment in favor of defendants as to that claim.

5. The remaining issues were not considered because of the disposition of the issues already discussed.

Reversed in part, affirmed in part and remanded.

1. JUDGMENTS — SUMMARY JUDGMENT — ISSUE OF MATERIAL FACT.

A motion for summary judgment based on the ground that there is no genuine issue of fact requires the court to review the entire record including affidavits, depositions and interrogatories and, giving the benefit of any reasonable doubt to the opposing party, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial before granting the motion (GCR 1963, 117.2[3], now MCR 2.116[C][10]).

2. DRAINS — DRAIN CODE — PETITION TO CONSTRUCT DRAIN — ABANDONMENT OF DRAIN PROJECTS.

The Drain Code prior to its 1973 amendment provided that the petition for any drain project was to be deemed abandoned if the contract for the construction of the drain was not let within five years of the filing of the petition to locate, establish and construct the drain; the 1973 amendment permitted, but did

not require, the drainage board to determine that a petition was deemed abandoned if a construction contract was not let within five years of the filing of the petition for the drain; the 1973 amendment was made applicable to all petitions which were in full force and effect on January 1, 1973 (MCL 280.126; MSA 11.1126).

3. DRAINS — DRAIN CODE — INTERCOUNTY DRAINS — PETITION TO CONSTRUCT DRAIN — NOTICE OF PETITION TO CONSTRUCT DRAIN.

County drain commissioners, within 20 days of receiving a petition concerning an intercounty drain, must notify the drain commissioners of the other affected counties and the director of the department of agriculture of the filing (MCL 280.122; MSA 11.1122).

4. ACTIONS — DEFENSES — LACHES.

Laches is an affirmative defense which depends not merely upon the lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff.

5. ACTIONS — DEFENSES — LACHES.

The successful assertion of a defense of laches requires a showing of passage of time combined with some prejudice to the party asserting the defense.

6. ACTIONS — DEFENSES — LACHES.

The defense of laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence.

7. ACTIONS — DEFENSES — LACHES.

The doctrine of laches, as a rule, is not applicable against a person challenging a drain project where the claim is that the drain board lacks jurisdiction to proceed with the drain project.

8. DRAINS — DRAIN CODE — RIGHTS OF WAY — RELEASES.

The purpose of the requirement in the Drain Code that the drain commissioners within 60 days of the first order of determination shall endeavor to secure releases of rights of way from the owners of the lands traversed by a proposed drain was to provide an orderly procedure for securing the releases and to prevent an immediate resort to condemnation proceedings (MCL 280.128; MSA 11.1128).

9. MUNICIPAL CORPORATIONS — ACTIONS — ABUSE OF DISCRETION — FRAUD.

A claim of abuse of discretion on the part of a municipal corpora-

tion or its officers requires the pleading and showing of some-
thing akin to bad faith or fraud.

*Shulaw & Bowne, P.C.* (by *Lynn D. Bowne*), for
plaintiff.

*W. J. Drillock,* for defendants.

Before: BRONSON, P.J., and R. B. BURNS and R. C.
KAUFMAN,* JJ.

R. B. BURNS, J. Plaintiff appeals from the trial
court's grant of summary judgment in favor of
defendants pursuant to GCR 1963, 117.2(3), now
MCR 2.116(C)(10). Plaintiff appeals and we reverse.

Plaintiff's complaint alleges numerous violations
of the Drain Code of 1956, MCL 280.1 *et seq.;* MSA
11.1001 *et seq.,* in connection with a proposed
drain project. In addition, plaintiff alleges that
defendants abused their discretion in not taking
any action in the 14 years since the project was
approved other than spending over $1,000,000.
Ultimately, plaintiff seeks the abandonment of the
entire drain project.

The Maple River goes through Shiawassee, Clin-
ton, and Gratiot counties, with its headwaters in
Shiawassee County. A county drain was estab-
lished along the river in 1903 in Gratiot County
and an intercounty drain was established along
the river in 1905 between Shiawassee and Clinton
counties. Sometime in late 1967 or early 1968,
petitions were filed with the drain commissioners
of the three counties requesting that in inter-
county drain be established in the three counties
along the river. The exact date of the filing of
these petitions is unknown as the dates were never
recorded in any of the three counties. After defen-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dant Drain Board, then newly-formed and consisting of the drain commissioners from the three counties, found the proposed project to be practical, a First Order of Determination was entered on June 26, 1968, apportioning the cost of the drain project among the three counties.

After further consideration of the matter, defendants decided to apply to the Soil Conservation Service for assistance from the federal government on the drain project. A Watershed Plan Agreement was reached on August 15, 1969, with the service. Under the agreement, the engineering would be done by the Army Corps of Engineers, with environmental impact statements to be obtained in the near future. It was subsequently determined that, for the purposes of obtaining federal funds, a wildlife area would be created, so defendants agreed with the Michigan Department of Natural Resources to participate in the department's wetlands project. Because money had to be obtained for the acquisition of land and other purposes, in 1973 an application was made to the Farmer's Home Administration to borrow over $1,500,000 for the purpose of obtaining land for dikes, water retention areas, and flood plains. In 1977, defendants amended the First Order of Determination in order to add more lands to the intercounty drain district, though the apportionment of costs between the counties remained the same.

In 1981, approximately 13 years after the Maple River Drain project was originally proposed, work had not yet begun on the drain, though it appeared that the cost of the project had escalated from the initial estimate of $6,000,000 to over $30,000,000. Because of the increase in costs, defendants decided to abandon the federal project and attempt to build the drain, in a scaled-down

version, with local funds only. In March of 1984, defendants changed the scope of the drain project again, planning to do less work in Shiawassee County. In addition, a resolution was proposed and passed increasing Shiawassee County's contribution from 25% to 35%, Clinton County's from 10% to 20%, and decreasing Gratiot County's from 65% to 45%. As of January 1, 1984, defendants have incurred liabilities of over $1,000,000, with work still not begun on the drain project.

Summary judgment was granted on several of plaintiff's claims on the grounds that there was no genuine issue of material fact and defendants were entitled to judgment as a matter of law. GCR 1963, 117.2(3), now MCR 2.116(C)(10). In order to prevail on such grounds, the movant must show that no future development of the evidence could justify a judgment in the opposing party's favor:

"A motion for summary judgment premised upon the ground that there is no genuine issue as to any material fact, GCR 1963, 117.2(3), requires the trial court to review the entire record to determine whether the non-moving party has discovered facts to support the claim or defense. The trial court is obligated to look beyond the pleadings and consider affidavits, depositions, and interrogatories. Based upon the entire record, the trial court must give the benefit of any reasonable doubt to the opposing party in determining whether there is a genuine issue as to a material fact. *Rizzo v Kretschmer,* 389 Mich 363, 371-372; 207 NW2d 316 (1973). Before judgment may be granted, the court must be satisfied that it is impossible for the claim asserted to be supported by evidence at trial. *Partrich v Muscat,* 84 Mich App 724; 270 NW2d 506 (1978); *Fry v Ionia Sentinel-Standard,* 101 Mich App 725; 300 NW2d 687 (1980)." *Huff v Ford Motor Co,* 127 Mich App 287, 293; 338 NW2d 387 (1983).

In ruling on such a motion, the trial court should

be liberal in finding a genuine issue of material fact. *Rizzo v Kretschmer,* 389 Mich 363; 207 NW2d 316 (1973). We address each of plaintiff's theories separately.

I

Plaintiff first argues that there was a genuine issue of material fact concerning plaintiff's claim that defendants failed to satisfy the contract letting and notice provisions of the Drain Code. Plaintiff alleges that two different provisions of the statute were unsatisfied.

First, plaintiff alleges that defendants failed to comply with the requirement that contracts be let within five years after the filing of the petitions to establish the drain. Prior to April 30, 1973, § 126 of the Drain Code[1] provided as follows:

"At the time and place fixed in said notice, or at an adjourned date, the drainage board shall receive bids and let contracts for the construction of the drain in the manner prescribed in chapter 9, being sections 221 to 223, inclusive, of this act. If no contract shall be let within 5 years after the date of filing the petition to locate, establish and construct the drain, the petition shall be deemed abandoned and no further action shall be taken to construct said drain unless a new petition shall be filed: Provided, That time during which any litigation shall be pending to contest the validity of such proceedings shall not be counted as a part of such 5-year period." 1956 PA 40, § 126.

However, 1973 PA 16 (effective April 30, 1973), amended § 126 to provide that, if no contracts are let within the five year period, "the drainage board *may* determine that the petition shall be deemed abandoned". (Emphasis added.) Thus,

[1] MCL 280.126; MSA 11.1126.

abandonment is no longer mandatory. The amendment further provided that the "provisions of this section shall apply to all petitions which are in full force and effect on the date of January 1, 1973, or thereafter". Accordingly, it must be determined whether the petitions in the instant case were "in full force and effect" on January 1, 1973. If so, there was no automatic abandonment of the project.

If the petitions were filed prior to January 1, 1968, and no contracts were let, the pre-1973 version of the statute would have deemed the project abandoned five years after the filing of the petitions. That is, if the petitions were filed in late 1967, as alleged by plaintiff, then in late 1972 the project would have been deemed abandoned for failure to let contracts. Accordingly, the petitions for the instant drain project would not have been "in full force and effect" as of January 1, 1973, and therefore would not be saved by the 1973 amendment.

The trial court and defendants contend that, in the absence of any proof, it should be assumed that the petitions were filed on April 30, 1968, as stated in the Order of Practicableness. Plaintiff alleges a time period falling somewhere between September 12, 1967, and February 5, 1968. The basis for this is that, under the Drain Code, 106 signatures on the petitions to establish the project were required. MCL 280.121; MSA 11.1121.[2] As of November 22, 1967, circulators of petitions containing 164 signatures of freeholders had filed affidavits that the petitions had been properly passed out and signed. At the latest, claims plaintiff, the petitions were filed on February 5, 1968,

[2] That section requires one-half of the freeholders to sign the petitions. In this case, there were 211 freeholders affected, thus requiring 106 signatures on the petitions.

when the drain commissioners of the three affected counties certified that all petitions were checked and all signatures verified.[3] Thus, depending on the exact date, the previous § 126 may apply.

Upon an examination of the available evidence, it is clear that there was still a genuine issue of material fact as to when the drain petitions were filed. If anything, the arguments of the parties show that there is a serious disagreement over a critical fact, with both sides having support for their positions. Therefore, we conclude that the trial court erred in granting summary judgment on this issue. The matter will have to proceed to trial to determine whether the petitions were filed prior to January 1, 1968.

Plaintiff's second contention under this issue is that § 122 of the Drain Code,[4] which requires county drain commissioners within 20 days of receiving a petition concerning an intercounty drain to notify the other affected counties' drain commissioners and the director of the Department of Agriculture of the filing, was not complied with. The trial court, in concluding that the notice requirement had been complied with, based that conclusion on the premise that the petitions had been filed on April 30, 1968, and that notice was given on May 3, 1968. Reversal on this issue is also required since we have concluded that there is a genuine issue of material fact on the question of the date of filing of the petitions.[5]

---

[3] Plaintiff advances the rather logical argument that the signatures could not have been checked and verified without the petitions having been filed.

[4] MCL 280.122; MSA 11.1122.

[5] We specifically do not address the question of the effect of a violation of § 122. Plaintiff argues that a violation of that section deprives defendants of jurisdiction over the drain project. Finding no violation, the trial court did not address the effect of a violation and we offer no opinion at this time.

Before concluding this issue, we wish to briefly consider defendants' defense of laches, based on plaintiff's 14-year delay in raising its objections. Laches is an equitable defense which demands a passage of time combined with prejudice to the defendant:

"Laches is an affirmative defense which depends not merely upon the lapse of time but principally on the requisite of intervening circumstances which would render inequitable any grant of relief to the dilatory plaintiff. *Lewis v Poel,* 376 Mich 167, 169; 136 NW2d 7 (1965), *Root v Republic Ins Co,* 82 Mich App 446; 266 NW2d 842 (1978). For one to successfully assert the defense of laches, it must be shown that there was a passage of time combined with some prejudice to the party asserting the defense of laches. *Head v Benjamin Rich Realty Co,* 55 Mich App 348, 356; 222 NW2d 237 (1974), *lv den* 393 Mich 792 (1975). See also *Wiljamaa v Board of Education of City of Flint,* 50 Mich App 688, 692; 213 NW2d 830 (1973). Laches is concerned mainly with the question of the inequity of permitting a claim to be enforced and depends on whether the plaintiff has been wanting in due diligence. *Sloan v Silberstein,* 2 Mich App 660, 676; 141 NW2d 332 (1966)." *In re Crawford Estate,* 115 Mich App 19, 25-26; 320 NW2d 276 (1982).

While defendants' argument that plaintiff's almost 14-year delay in bringing suit is inequitable seems at first blush to have merit, there are several reasons why it is not convincing. First, as a rule the doctrine of laches will not be persuasive where the underlying claim is a lack of jurisdiction over a drain project, which is the case here with plaintiff's §§ 122 and 126 claims. *Quarderer v Shiawassee County Drain Comm'r,* 82 Mich App 692, 697-698; 267 NW2d 151 (1978). Second, there

does not seem to be a lack of due diligence on the part of plaintiff, which this doctrine is designed to "punish". While the code violations at issue did arise some ten years before suit was filed, it seems that the plaintiff was willing to wait and see if defendants would eventually act on a drain project which at first appeared beneficial to all concerned. It was only after approximately $1,000,000 was spent on a project that had not yet been begun and after the 1981 decision to totally finance this drain project with local funds, that plaintiff realized that defendants would, in plaintiff's opinion, never properly oversee this project. This prompted the filing of suit by plaintiff one year later. Given this pattern of action, laches would not be appropriate. See *Rofe v Robinson (On Second Remand)*, 126 Mich App 151; 336 NW2d 778 (1983).

## II

Plaintiff next contends that the trial court erred in granting defendants summary judgment on plaintiff's claim that the members of defendant board violated the Drain Code by failing to obtain releases of rights-of-way within 60 days of the First Order of Determination. Section 127 of the Drain Code[6] provides:

"Within 60 days next succeeding the entry of the first order of determination the said commissioners shall within their respective counties endeavor to secure from the owner of each parcel or tract of land which would be traversed or damaged by said proposed drain a release of the right of way and all damages on account thereof."

---

[6] MCL 280.127; MSA 11.1127.

Since no right-of-way releases have yet been sought, this section has not been complied with.[7]

However, we are not convinced that violation of § 127 requires termination of the project. Section 128 of the Drain Code[8] provides for condemnation proceedings to obtain right-of-way releases not obtained in the 60-day period following the first order of determination. We conclude that once the 60-day period has expired, § 128 must be followed to obtain releases. There is no reason to conclude that violation of § 127 requires termination of a drain project. Rather, the Legislature was merely establishing the order in which steps were to be taken and to prevent an immediate resort to condemnation proceedings.

### III

Plaintiff next objects to the trial court's grant of summary judgment to defendants on plaintiff's claim that defendants lacked authority to amend the first order of determination with respect to the apportionment of costs of the project between the counties involved. Plaintiff seeks a return to the apportionment of costs contained in the original order. Because of our conclusion to remand for further proceedings on Issue I, we find it unnecessary to consider this issue at this time since, if plaintiff ultimately prevails on that issue, this issue will be rendered moot.

### IV

Plaintiff next argues that the trial court erred in

---

[7] We have considered and rejected defendants' argument based on the position that this is a maintenance and extension of an existing drain subject to Chapter 8 of the Drain Code, rather than a new drain subject to Chapters 5 and 6. Even if defendants' characterization of the drain project is correct, §§ 121 to 135 are explicitly made applicable to Chapter 8 drains by the provisions of § 192.

[8] MCL 280.128; MSA 11.1128.

granting defendants summary judgment on plaintiff's claim that defendants had abused their discretion in the handling of the drain project. Generally, for an abuse of discretion claim to succeed, something akin to bad faith or fraud must be established. See 2 McQuillin, Municipal Corporations (3d ed), § 10.37, p 834.

Given the available facts, it cannot be said with certainty whether fraud or bad faith on the part of defendants occurred or not. There certainly is circumstantial evidence that could lead to that conclusion, given the great period of time that has elapsed without any progress being made on the drain project and the large amount of liabilities which have been incurred by the drain board, over $1,000,000, on the project so far, with the "recipients" of those funds as of this time not being firmly established. On the other hand, there have been plausible explanations forwarded by defendants for the delays and costs of this project, including delays by the Army Corps of Engineers in providing plans for the project and the need to purchase significant amounts of land for the establishment of a protected wetlands area per the requirements of the federal government if nonlocal funding was to be obtained. Thus, a genuine issue of material fact exists as to plaintiff's claim of abuse of discretion. Therefore, the trial court erred in granting summary judgment.

V

Plaintiff's final argument is that the 1973 amendment to § 126 which retroactively changed the remedy for a violation of § 126, discussed under Issue I, is constitutionally infirm as it impairs contractual obligations or revokes preexist-

ing vested rights. We conclude that it is unnecessary to consider plaintiff's constitutional claims at this time since, as discussed under Issue I, plaintiff may be able to prove on remand that the petitions were filed prior to January 1, 1968. If plaintiff proves that to be the case, the 1973 amendment would be inapplicable in any event and the constitutional issue need not be addressed.

## CONCLUSION

The decision of the trial court is reversed in part and affirmed in part and the case is remanded to the trial court for further proceedings consistent with this opinion. Jurisdiction is not retained. No costs, a question of public importance being involved.