DEPARTMENT OF PUBLIC HEALTH v RIVERGATE MANOR

Docket No. 100631. Argued March 6, 1996 (Calendar No. 10). Decided
    July 16, 1996.

Rivergate Manor applied to the Department of Public Health for a cer-
    tificate of need for permission to construct a 223-bed nursing home
    in the City of Riverview. The department denied the application
    because of a failure to show need in the southwest Wayne subarea.
    The Certificate of Need Board reversed. Thereafter, Rivergate
    entered into an agreement with Senior Services Development Asso-
    ciates to transfer its common stock if it was able to amend the cer-
    tificate of need to allow construction of a nursing home in West-
    land, located in a different subarea than Riverview. The Depart-
    ment of Public Health denied the modification, finding that the
    certificate of need was site specific and not transferable, and later
    clarified its decision to find that because the certificate had been
    granted by the board and not by the department, the department
    was without authority to modify it. The board later granted River-
    gate the modification sought. The Department of Public Health
    then filed a complaint in the Ingham Circuit Court against the Cer-
    tificate of Need Board, seeking an order of superintending control
    on the ground that the procedure the board employed in reviewing
    Rivergate's request was contrary to law. The court, Lawrence M.
    Glazer, J., granted summary disposition for the department, stating
    the board must act in accordance with law and only to the extent
    of its statutory authority, and vacated the board's order granting
    the modification. The Court of Appeals, HOOD, P.J., and CAVANAGH
    and D. A. TEEPLE, JJ., affirmed in an unpublished opinion per curiam
    (Docket No. 146841). Rivergate Manor and Senior Services appeal.

In an opinion by Justice LEVIN, joined by Chief Justice BRICKLEY,
    and Justices CAVANAGH, BOYLE, and MALLETT, the Supreme Court
    held:

The Certificate of Need Board exceeded its authority when it
    granted the requisite modification without observing the requisite
    procedural safeguards. The circuit court acted properly in issuing
    the order of superintending control under the circumstances.

1. The circuit court has superintending control over inferior
    courts and tribunals. Traditionally, superintending control has been

used only to determine if the inferior tribunal, upon the record made, had jurisdiction and whether it exceeded that jurisdiction and proceeded according to law. An order of superintending control will not be granted when the party seeking the order is entitled to pursue an appeal, or where the petitioner seeks to employ the court's power to superintend as a substitute for an appeal or to evade a statutory prohibition of an appeal. Because the Department of Public Health is precluded by statute from appealing the board's decision, under the circumstances the circuit court had jurisdiction to consider the department's complaint seeking superintending control. While the Certificate of Need Board had the jurisdiction to modify the certificate of need, the board acted without authority in modifying the certificate because it failed to notify the department and minimally provide it with an opportunity to object to the modification.

2. Whether an order of superintending control should be issued depends on the circumstances of the specific case. The powers of administrative boards are limited by the statutes creating them to those conferred expressly or by necessary or fair implication. In this case, the Certificate of Need Board, by necessary and fair implication, had the power to modify a certificate of need that it had previously granted. However, when a request for modification seeks permission to build the proposed facility in a different subarea, all prior considerations regarding need, made in the context of the original application, largely are rendered irrelevant. The central statutory issue, whether there is a need, must be reevaluated, focusing on the new locale. In this case, the modification hearing did not comply with the Administrative Procedures Act. No notice of Rivergate's request to modify was given to the department, and the board's decision to grant modification did not include findings of fact and conclusions of law, and was not supported by and in accordance with competent, material, and substantial evidence.

3. The doctrine of laches is a tool of equity, applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party. In this case, the doctrine does not invalidate the decision of the circuit court because Rivergate and Senior Services cannot show sufficient prejudice. Because equitable estoppel, like laches, requires a showing of prejudice, the appellants' equitable estoppel argument also must fail.

Justice RILEY, joined by Justice WEAVER, concurring, stated that Rivergate Manor's request to change subareas did not, as a matter of law, constitute a modification of the certificate of need and should have been submitted for consideration to the Department of

Public Health in the form of a new application for a certificate of need. Thus, it is unnecessary to decide whether the Certificate of Need Board has the authority to modify a certificate of need.

Affirmed.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Ronald J. Styka*, Assistant Attorney General, for the plaintiff.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Patrick Burkett*), and *Cook, Goetz & Rogers, P.C.* (by *John A. Cook*), for the defendants.

LEVIN, J. We granted leave to appeal to decide whether the circuit court erred in entering an order of superintending control, declaring that the Certificate of Need Board of the Department of Public Health acted "without authority" in granting Rivergate Manor's request for modification of a certificate of need issued by the board. The Court of Appeals, in an unpublished opinion,[1] affirmed the decision of the circuit court. We affirm.

I

In 1983, Rivergate Manor applied to the Michigan Department of Public Health, pursuant to part 221 of the Public Health Code,[2] for a certificate of need to permit it to construct a 223-bed nursing home in the City of Riverview. The department denied Rivergate's application on the ground that it had failed to show a

---

[1] Issued June 13, 1994 (Docket No. 146841).

[2] 1979 CL 333.22101 *et seq.*; part 221 was repealed and replaced by 1988 PA 332, effective October 1, 1988, with part 222, MCL 333.22201 *et seq.*; MSA 14.15(22201) *et seq.*

need for the proposed home in the subarea where Riverview is situated.[3]

The Certificate of Need Board reversed the department's decision and, in October, 1987, issued a certificate of need to Rivergate.

Rivergate then entered into an agreement with Senior Services Development Associates to transfer its common stock to Senior Services for $125,000 if Rivergate was able to have the certificate of need amended to allow construction of a nursing home in Westland,[4] which is located in a different subarea than Riverview.

In July 1990, Rivergate communicated with the Department of Public Health in an effort to have the certificate of need modified. The department responded that the certificate of need was site specific and not transferable. After Rivergate asked for clarification, a department representative responded that because the certificate had been granted by the Certificate of Need Board and not by the department, the department was "without authority" to modify it.

Rivergate then requested a modification of the certificate from the Certificate of Need Board, explaining why it thought it would be appropriate for the board to modify the certificate of need to allow the project to be built in the northwest Wayne, rather than the southwest Wayne, subarea. On October 2, 1990, the board held a public meeting at which Rivergate's request was discussed in some depth. Twenty days

---

[3] For statutory purposes, Riverview is located in the southwest Wayne subarea, also known as subarea 68.

[4] A modification of financial terms set forth in the certificate of need was also a prerequisite.

later, the board granted Rivergate the requested modification.

After the release of the board's decision, Rivergate and Senior Services completed the sale of Rivergate's common stock at a lower purchase price. The closing included an immediate nonrefundable payment of $25,000 from Senior Services to Rivergate.

On January 16, 1991, the Department of Public Health filed a complaint in the Ingham Circuit Court, seeking an order of superintending control over the Certificate of Need Board on the ground that the procedure it employed in reviewing Rivergate's request was contrary to law. After both parties filed motions for summary disposition, the circuit court granted summary disposition for the department under MCR 2.116(C)(10). Stating that the board must "act in accordance with law and only to the extent of its statutory authority," the court vacated the board's order granting the modification of Rivergate's certificate of need.

The Court of Appeals affirmed in an unpublished per curiam opinion.[5]

II

We first consider whether the circuit court had jurisdiction under the circumstances to superintend the Certificate of Need Board. We conclude that it did.

_____

[5] This Court granted Rivergate's application for leave to appeal, 450 Mich 874 (1995).

A

The constitution,[6] and the Revised Judicature Act[7] provide that the circuit court has superintending control over inferior courts and tribunals subject to rules promulgated by this Court. This power of superintending control, enforced by an order of superintending control,[8] is available only in a limited number of circumstances. "An order of superintending control . . . traditionally has been used only to determine 'if the inferior tribunal, upon the record made, had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law.' " *In re People v Burton*, 429 Mich 133, 139; 413 NW2d 413 (1987), quoting *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672; 194 NW2d 693 (1972).[9]

An order of superintending control will not be granted when the party seeking the order is entitled to pursue an appeal.[10] Nor will an order of superintending control be issued where the petitioner seeks to employ the court's power to superintend as a sub-

---

[6] Const 1963, art 6, § 13.

[7] MCL 600.615; MSA 27A.615.

[8] See MCR 3.302(A).

[9] See also *Beer v Fraser Civil Service Comm*, 127 Mich App 239, 242; 338 NW2d 197 (1983), stating that an order of superintending control "is an original civil action designed to require the defendant to perform a clear legal duty," citing *People v Flint Municipal Judge*, 383 Mich 429, 432; 175 NW2d 750 (1970).

[10] When an appeal in the Supreme Court, the Court of Appeals, the circuit court, or the recorder's court is available, that method of review must be used. If superintending control is sought and an appeal is available, the complaint for superintending control must be dismissed. [MCR 3.302(D)(2).]

See also *In re Payne*, 444 Mich 679, 687; 514 NW2d 121 (1994).

stitute for an appeal or to evade a statutory prohibition of an appeal.[11]

Both parties concede that the Department of Public Health is precluded by statute from appealing the Certificate of Need Board's decision.[12] The department asserted in its complaint for superintending control that "the CON Board has acted contrary to law," and "violated its clear legal duty" by making its decision to modify Rivergate's certificate of need without observing the requisite procedural safeguards. The department did not take issue with the substantive merits of the board's decision to modify Rivergate's certificate. We conclude that under the circumstances, the circuit court had jurisdiction to consider the department's complaint seeking superintending control.

B

Rivergate and Senior Services assert that an order of superintending control nevertheless is not available, arguing that "superintending control is an inappropriate remedy where an appeal has been specifically precluded by the Legislature." They rely on *In re People v Burton*, in which this Court concluded that the Court of Appeals improperly exercised superin-

---

[11] *In re People v Burton* at 142.

[12] If an applicant for a certificate of need is aggrieved by the decision of the department or if the recommendation of the health systems agency is not accepted, the applicant or the health systems agency may request a hearing to be conducted pursuant to the administrative procedures act of 1969 by the appeals authority created pursuant to section 22121(2). The decision of the appeals authority to issue or deny a certificate of need shall be final and is binding on the department. [1978 PA 368, § 22165, MCL 333.22165; MSA 14.15(22165), repealed by 1988 PA 332.]

tending control authority when it reversed the trial court's order granting a new trial.

*In re People v Burton* and *Michigan Affiliated Healthcare System v Dep't of Public Health,* 209 Mich App 699; 531 NW2d 722 (1995), also cited by Rivergate and Senior Services, dealt with situations in which superintending control was sought to review a lower court's or tribunal's decision on the merits, not to inquire whether a lower court or tribunal had the authority to act in the manner in which it did.

The situation here is somewhat similar to that in *Genesee Prosecutor v Genesee Circuit Judge, supra* at 684. There, the judge had the power or jurisdiction to amend the information to add a related offense with a lesser penalty, and to accept a plea of guilty to the lesser offense, but did so without the consent, and over the objection, of the prosecutor. This Court held that because the "judge acted without authority in amending the information over the objection of the prosecutor," a writ of superintending control would issue vacating the decision of the judge. We conclude, as set forth in part III(A), that the Certificate of Need Board has the power (jurisdiction) to modify a certificate of need, but, as set forth in part III(B), failed to notify the department and minimally provide it with an opportunity to object to the modification. The board, much like the Genesee circuit judge, "acted without authority in amending" (modifying) the certificate.

III

We turn to the question whether the circuit court, which we have found had jurisdiction to issue an order of superintending control, properly exercised

its power in this case. "Whether an order of superintending control should issue depends upon the circumstances in the specific case." *In re People v Burton, supra* at 142. We conclude that the Certificate of Need Board exceeded its authority when it granted the requested modification without observing the requisite procedural safeguards. The circuit court acted properly in issuing the order of superintending control order under the circumstances.

A

The Department of Public Health argues that the Certificate of Need Board lacked the power to modify Rivergate's certificate of need. There is, indeed, nothing in part 221 of the Public Health Code that explicitly stated that the board is provided such power. The closest the act came to addressing the authority to modify was § 22123(2)(d), which provided that the Department of Public Health was to promulgate rules necessary to implement part 221, which could "include: . . . [t]he duration, *modification,* and extension of certificates issued under this part." (Emphasis added.)

The absence of an explicit grant of authority is not dispositive. This Court, in *Coffman v State Bd of Examiners in Optometry,* 331 Mich 582, 590; 50 NW2d 322 (1951), said "powers [of administrative boards] are limited by the statutes creating them to those conferred expressly *or by necessary or fair implication.*" Quoting 42 Am Jur, § 26, pp 316 ff (emphasis added). The Certificate of Need Board, by necessary and fair implication, had the power to modify a certificate of need that it had previously granted.

The language of § 22123(2)(d) respecting "modification" evidences that the Legislature intended that the power to modify certificates of need would be exercised by some administrative body, either the Certificate of Need Board or the Department of Public Health. The department's failure to promulgate rules clarifying under what circumstances, if any, a certificate of need may be modified, does not negate the legislative expectation that, in appropriate circumstances, modification is permissible.

We conclude that the Certificate of Need Board, the tribunal that issued the certificate of need, had the authority to modify its earlier decision. "Every tribunal, judicial or administrative, has some power to correct its own errors or otherwise appropriately to modify its judgment, decree, or order." 2 Davis, Administrative Law, § 18.09, p 606.

B

Although the Certificate of Need Board possessed the power to modify its decision, it was required to exercise that power in an appropriate manner. In this case, the board was presented with a request to change the specifics of the original certificate, to substitute a new location in a different subarea for the original, and to modify the project costs. This was not a minor or insignificant request. To the contrary, when a request for modification by the certificate holder seeks permission to build the proposed facility in a different subarea, all prior considerations regarding need, made by the board in the context of the original application, are rendered largely irrelevant. The central statutory issue whether there is a need,

the question at the core of the certification process,[13] must be reevaluated, focusing on the new locale.

Section 22121(3) provided that the appeals hearing held by the Certificate of Need Board "shall be conducted pursuant to the administrative procedures act of 1969." MCL 333.22121(3); MSA 14.15(22121)(3). It is not claimed that the 1987 board hearing failed to satisfy this requirement.

The modification hearing conducted by the board did not, however, comply with the Administrative Procedures Act. While it may not be necessary to observe APA procedural requirements when the modification issue is relatively minor, when the issue involves a change in subarea, the board was required to observe the same standards required in the initial review. A request for modification involving a new

---

[13] MCL 333.22111; MSA 14.15(22111), repealed by 1988 PA 332, provided, in relevant part:

A certificate of need program shall be established and shall:

\*          \*          \*

(b) Provide that only needed services, facilities, and organizations shall be offered or developed in this state.

Consistent with this, MCL 333.22132; MSA 14.15(22132) provided in part:

In reviewing a request for a certificate for construction of, conversion of, addition to, or modernization of a health facility, including a project to correct a licensing deficiency, approval shall be based on, but not limited to, a demonstrated current and future need for the facility or a part of the facility.

See also *Greenbriar Convalescent Center, Inc v Public Health Dep't,* 108 Mich App 553, 558; 310 NW2d 812 (1981), "The purpose underlying both state and federal [certificate of need] statutes is to contain the costs of medical care by restricting the construction of unneeded health facilities."

subarea raises the same need-related issues that were present in the earlier appeals hearing.

The hearing conducted by the board to review Rivergate's and Senior Services' request for modification failed to observe the APA requirements in two respects. First, no notice of Rivergate's request to modify was given to anyone at the Department of Public Health.[14] The request was only added to the October 2, 1990, agenda after the board's meeting had already begun. This was contrary to APA, § 82.[15] In addition, the board's brief decision granting the requested modification did not include "findings of fact and conclusions of law," nor was it "supported by and in accordance with the competent, material, and substantial evidence" as required by § 85. Rather, the board released a decision that only served to provide notice of the outcome and, as is clear from a reading of the transcript of the hearing, the decision was based solely on the representations of Rivergate's agent that the Westland subarea was in need of the facility.

---

[14] This appears in the statement of the department's representative at the board meeting. When asked to respond to Rivergate's representative's comments regarding the modification, he said, "I don't know what the department's position is because I had no notice this was going to be on the agenda."

[15] Section 82 provides:

Unless required for disposition of an ex parte matter authorized by law, a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, *except on notice and opportunity for all parties to participate.* [MCL 24.282; MSA 3.560(182) (emphasis added).]

IV

We now address Rivergate's and Senior Services' contention that the decision of the Court of Appeals should be reversed because the department's complaint for superintending control was barred by laches and equitable estoppel or, in the alternative, because the department lacks the authority to challenge the Certificate of Need Board's approval of Rivergate's modification request because it failed to promulgate a state medical facilities plan as required by the certificate of need statute.

A

Rivergate and Senior Services base their laches claim on the department's eighty-six-day delay before filing a complaint seeking superintending control. In the interim, the two apparently finalized their transaction with Senior Services, paying Rivergate a nonrefundable down payment of $25,000.

The doctrine of laches is a tool of equity that may remedy " 'the general inconvenience resulting from delay in the assertion of a legal right which it is practicable to assert.' " *Lenawee Co v Nutten,* 234 Mich 391, 396; 208 NW 613 (1926). It is applicable in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party. *Lothian v Detroit,* 414 Mich 160, 168; 324 NW2d 9 (1982); *McGregor v Carney,* 271 Mich 278, 280; 260 NW 163 (1935); 11A Callaghan's Michigan Pleading & Practice (2d ed), § 92.12, p 580.

Assuming that the department's delay in filing its complaint for superintending control can be considered unacceptably long, we conclude that the doc-

trine of laches does not invalidate the decision of the circuit court because Rivergate and Senior Services cannot show sufficient prejudice. The basis for the claim that Rivergate and Senior Services suffered harm from the delay is Senior Services' assertion that it has already paid a nonrefundable $25,000 down payment to Rivergate, and is obligated to purchase Rivergate's now worthless common stock for $100,000.

Equity, by its very nature, requires the weighing of often competing interests to reach an outcome that is fair and just to all involved. Even if Senior Services' assertion that it will lose $25,000 and is obligated to pay another $100,000 because of its agreement with Rivergate is accurate, we are unable to conclude that such a result is "unfair" or "unjust" in the light of the comparatively greater injustice to the citizenry of licensing a health care facility in what may well be an already over-bedded region. See *Bennington Twp v Maple River Inter-Co Drain Bd*, 149 Mich App 579, 588; 386 NW2d 599 (1986).

Rivergate and Senior Services also assert that the decision of the Court of Appeals should be reversed by the application of the doctrine of equitable estoppel. Because equitable estoppel, like laches, requires a showing of prejudice, we similarly reject Rivergate's and Senior Services' equitable estoppel argument.

B

Finally, Rivergate Manor and Senior Services contend that the Court of Appeals decision should be reversed because the Department of Public Health is powerless to challenge the Certificate of Need Board's approval of Rivergate's requested modifica-

tions because the department failed to properly publish a state medical facilities plan. In *West Bloomfield Hosp v Certificate of Need Bd*, 452 Mich 515; 550 NW2d 223 (1996), we reject this contention.

Affirmed.

BRICKLEY, C.J., and CAVANAGH, BOYLE, and MALLETT, JJ., concurred with LEVIN, J.

RILEY, J. (*concurring*). I agree with the majority that the circuit court properly issued an order of superintending control over the Certificate of Need Board to determine whether the board " 'had jurisdiction, whether or not it exceeded that jurisdiction and proceeded according to law.' " *Genesee Prosecutor v Genesee Circuit Judge*, 386 Mich 672, 681; 194 NW2d 693 (1972), quoting *In re Fredericks*, 285 Mich 262, 267; 280 NW 464 (1938). I write separately to express my belief that Rivergate Manor's request to change sub-areas, inter alia, did not, as a matter of law, constitute a modification and should have been submitted for consideration to the department in the form of a new application for a certificate of need. Accordingly, I find it unnecessary to decide whether the Certificate of Need Board has the authority to modify a certificate of need.

A

Through 1978 PA 368, MCL 333.22123(2); MSA 14.15(22123)(2), the Legislature granted the department the authority to

promulgate rules necessary to implement this part. The rules may include:

*      *      *

(c) Procedures for state and local review of applications for issuance of a certificate of need and modification . . . .

(d) The duration, *modification*, and extension of certificates issued under this part. [Emphasis added.]

Pursuant to MCL 333.22123(2); MSA 14.15(22123)(2), the department promulgated rules, including 1986 AACS, R 325.9413(1), specifically addressing amendment of certificates:

An applicant may make a written request to the department for an amendment to a certificate of need. After consultation with the appropriate health systems agency, a determination shall be made by the department whether the amendment does or does not require another review. A certificate of need issued after a concurrent comparative review shall not be amended to increase the scope of the project. Unless waived by the department, amendments to a certificate of need shall be subject to the same conditions and stipulations imposed on the original certificate.

Because the request in this case involved an entirely new project in a different subarea, it is not necessary to decide whether, in an appropriate case in which the request for modification does not change the "scope" of the project, the Certificate of Need Board has the power to modify a certificate of need it has issued.

B

In response to the National Health, Planning and Resources Development Act, 42 USC 300k *et seq.* (now repealed), the Legislature enacted 1978 PA 368, MCL 333.22101 *et seq.*; MSA 14.15(22101) *et seq.*, as part of the Public Health Code. Both were intended to contain rising health care costs and avoid unneces-

sary duplication of facilities and services while continuing to provide for the health of citizens. See Shannon, *Certificate of need: Where it has been and where it is going*, 67 Mich B J 592 (1988). The Legislature declared that the certificate of need program was established in order to:

> (a) Provide for *review and determination of need* before new institutional health services, facilities, and organizations are offered or developed or substantial expenditures are undertaken in preparation for the offering or development.
>
> (b) Provide that *only needed services, facilities, and organizations* shall be offered or developed in this state.
>
> (c) Meet the policies and procedures governing the issuance of certificates of need required for projects under federal grant-in-aid programs and federal loan guarantee programs. [MCL 333.22111;   MSA 14.15(22111)   (emphasis added).]

The Court of Appeals has noted that the *underlying purpose* of the legislation was *to prevent* "the construction of unneeded health facilities." *Greenbriar Convalescent Center, Inc v Public Health Dep't*, 108 Mich App 553, 558; 310 NW2d 812 (1981). To that end, the state established subareas designated by county, except Wayne, which is divided into three subareas. Determinations of the existence of a need for health facilities was then evaluated by subarea. MCL 333.22131(1); MSA 14.15(22131)(1) established a litany of criteria that the department and a health systems agency must consider when determining whether to issue a certificate of need. The criteria is weighted on a scale of one to three.[1] The following

---

[1] See 1986 AACS, R 325.9208.

criteria were given a weight of three, i.e., "very important":

> (c) *The need of the population served* or to be served for the health care facilities or services being reviewed.
>
> (d) The feasibility and availability of less costly alternatives or more effective methods of providing the health care facilities or services being reviewed.
>
> (e) The relationship of the health care facilities or services being reviewed to the existing health care systems of the health services *areas* in which the facilities or services are provided or proposed, including the probable impact on the costs of providing health services in the *areas* served. [Emphasis added.]

C

Mindful of the evaluating criteria and, hence, the specific purposes of the legislation, we must closely review Rivergate's request in this case. After the department denied Rivergate's certificate of need, Rivergate appealed to the Certificate of Need Board. On October 28, 1987, the board granted a certificate of need to Rivergate, stating that "[t]his project involves the construction of a long-term care facility which would be licensed for 200 long-term nursing care beds and 23 home for the aged beds. The facility would be located on a site which fronts on Pennsylvania Avenue and is adjacent to Fort Street in Riverview (Wayne County)." In 1990, Rivergate requested that the location of the project be changed from the City of Riverview to the City of Westland, which is located in a different subarea, and changed the project costs from $5.4 million to approximately $7 million.

Rivergate's request to change the subarea in the existing certificate of need would require a totally new evaluation using the criteria listed in MCL 333.22131(1); MSA 14.15(22131)(1).[2] This request for "modification" strikes at the very heart of the legislation.[3] Given that the entire purpose of the legislation was to control the number of beds in a given subarea, to allow such a modification by amendment of an existing certificate of need would frustrate the purpose of the act. Such a modification would not only extend the "scope" of the project,[4] it contemplates a totally new project that would require a wholly new determination of the need for such a facility in the proposed subarea. This would require the same process previously used by Rivergate to obtain the original certificate of need. Accordingly, Rivergate's request to build a facility in a different subarea should have been in the form of a new certificate of need.

D

Finally, having characterized Rivergate's request as more than a mere modification or amendment, it is

---

[2] See *Downriver Nursing Associates v Public Health Dep't,* 193 Mich App 594; 484 NW2d 748 (1992), in which the Court of Appeals rejected the argument that a certificate of need could be modified to change the site of a proposed nursing home even though the proposed change was within the same subarea as the specified city in the original certificate of need. Finding that an issued certificate of need conveys a property interest, the Court held that "[t]he [certificate of need], as issued, did not provide plaintiffs a property interest in any project outside the City of Dearborn." *Id.* at 601.

[3] Indeed, the majority acknowledges that resolution of Rivergate's request requires a *new* determination whether there is a need in a different subarea.

[4] 1986 AACS, R 325.9413 prohibits an amendment of a certificate of need that would "increase the scope of the project."

unnecessary for me to decide whether the Certificate of Need Board had the authority to modify the certificate of need. In this case, the board exceeded its authority by approving what was essentially a new certificate of need. The request to change subareas should have been in the form of a new certificate of need submitted to the department and then, if denied, appealed to the Certificate of Need Board. Accordingly, I would affirm the decision of the Court of Appeals on this basis.

WEAVER, J., concurred with RILEY, J.