NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0259n.06

No. 21-1714

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 29, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JAMES MILICAN, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| HOME DEPOT U.S.A., INC., | ) | |
| Defendant-Appellee. | ) | OPINION |
| | ) | |

Before: CLAY, ROGERS, and KETHLEDGE, Circuit Judges.

ROGERS, Circuit Judge. Plaintiff James Milican alleges that defendant Home Depot breached a contract from 2000 establishing that Milican would receive annual bonuses at the Regional Vice President ("RVP") level for the remainder of his employment with Home Depot. While there is some evidence that Home Depot officials at one point in 2000 offered to pay Milican an RVP-level bonus, Milican to date has never been paid an RVP-level bonus and has little evidence that Home Depot agreed to pay him the higher bonus for the duration of his employment with Home Depot. Even if Milican entered into an enforceable contract to that effect with Home Depot, the doctrine of laches bars Milican's enforcement of the agreement when he filed suit nearly two decades after learning of the alleged breach.

Milican began working for Home Depot in 1995 and was still employed at Home Depot as a district services manager when he initiated this suit in 2021. In early 1999, Milican was serving as a district manager and was responsible for overseeing all operations at about ten stores. One of the stores Milican was responsible for was the Southfield, Michigan location. In 1999 several

Black employees of the Southfield store alleged racial discrimination, resulting in an Equal Employment Opportunity Commission ("EEOC") investigation and a lawsuit. Milican claims he was not involved in the alleged discrimination and was never informed he was at fault, but that Milican became involved in the situation due to his position as a district manager. At one point a Southfield employee allegedly called Milican to tell him that there were longstanding issues with discrimination against Black women at the store, including from before Milican's tenure as district manager, and in response Milican told the regional or divisional Human Resources official about the complaint. Milican claims that in response to the ongoing issues at the Southfield store, Alan Barnaby informed Milican in a February 2000 meeting that he was being removed from the district manager position and would instead be an install manager, which Milican characterized as a demotion. Milican alleges that at some point Barnaby told Milican that he "took one for the team."

Milican met again with Barnaby and George Collins, a vice president, in March 2000. According to Milican, Barnaby verbally informed Milican of "the decision they made to move [Milican] to bonus as a RVP because of the situation that occurred with [Milican] being moved." Barnaby allegedly added that Milican would receive the RVP-level bonus "for the remainder [Milican] stayed with Home Depot." Milican asserts that he also received a document called an action notice that promised Milican the RVP-level bonus for the remainder of his employment at Home Depot. Both Milican and Home Depot are unable to locate this document. When asked at his deposition what Milican promised Home Depot in exchange for the bonus payments, Milican responded "I did not promise anything." Milican also stated that his plan would have been to continue working at Home Depot even if he never received the alleged action notice containing the promise of higher bonuses.

On March 16, 2000, Collins sent an email with the subject "Jim Milican" and copied Milican and Barnaby. The email provided that "[o]ur agreement with [Milican] when he went from a District Manager to his new position was that he would bonus off the division. I am not sure what the procedure is to make this happen." Milican claims that in response to the March 16 email, he verbally reminded Barnaby that the agreement was for Milican to bonus as an RVP, not "off the division," which would have been a more senior position. On March 20, Collins sent another email with Milican and Barnaby copied, stating that "Milican's bonus structure should be as a RVP, calculated from ROA & Sales . . . I will be faxing over the action notice shortly." Another internal email on March 22 from a different employee inquired about approvals for Milican to "bonus off the region as an RVP," and added that if no further approvals were necessary, the employee would "keep this email and the action notice in [her] 2000 files." An email from another employee a few days later, however, states that Milican and Barnaby need to "understand the program under which [Milican] is categorized—otherwise he may go through 2000 assuming that his bonus will be th[e] same as the RVP (his bonus program will be very different and is currently under development)."[1] Barnaby left Home Depot in 2002, and Collins left sometime before 2010.

To date, Milican has never held the position of RVP and has never received an RVP-level bonus. In 2000 or 2001, Milican became aware that he was not receiving the bonus of "50 percent or up to 50 percent that [Milican] was entitled to." Milican claims that he then refused to sign an associate action notice presented to him by Pat Sill, the divisional install manager, because the document did not reflect Milican receiving RVP-level bonuses. Milican alleges that he asked Sill

---

[1] Milican does not remember where he obtained the emails that he was not copied on.

to look into the bonus, and that Sill did not give an answer and simply responded that "all they wanted [Milican] to do was sign that action notice."

Milican claims that he kept a copy of the 2000 action notice that promised him an RVP- level bonus posted on his office wall for years as a reminder of what he felt he was owed. Tad Renard, who was an install manager with Milican at the time, remembered seeing a "performance or action notice thumb-tacked up on [Milican's] wall," and Renard read the paper and discussed it with Milican. In his deposition, Renard stated that "there was a bunch of words in there pertaining to that [Milican] would bonus at the DM level or RVP level or something to that extent." Renard said that Milican referred to the action notice as his "get out of jail free card." Milican also alleges that at some point between 2006 and 2008, he told an RVP named Crystal Hanlon that he was concerned about his bonus payments. Milican asserts that Hanlon responded "[m]an, you did get screwed over," and Milican expressed his agreement with her.

Milican became a district services manager in 2009 and since then has reported to Renard, who had been promoted to regional services manager. Every year since at least 2014, Milican has had an annual meeting with Renard to review Milican's performance, salary, promotion opportunities, and management incentive plan ("MIP"). The MIP includes annual bonuses, and as a district services manager, Milican's bonus target was 25 percent of his base pay. Milican reviewed his bonus payments at these annual meetings with Renard, and he accepted his bonuses and stock options each year. Milican claims that at some point after 2009, he made a comment during a review with Renard that he "should be at 50 percent" for his bonus calculation, and that Renard agreed with him. Renard characterized his discussions with Milican as follows:

> Milican was going to continue to get the bonuses that he would've gotten as a DM based on what an RVP would get . . . that's kind of the nutshell of the conversations that we've had with [Milican] or that I've had with [Milican] and we've had those probably a couple times, maybe three times over the years and then a little more

4

> recently. . . . [W]hen [Milican] first started to pursue it with Home Depot, obviously, he's my direct report so he comes to me first . . . at that point, I told him . . . there's not a lot I can do from an HR standpoint, I said, but you know, obviously, pursue your way up through Home Depot, talk to who you need to talk to, show them what documentation you have and that's kind of where we are now.

When asked why he did not further pressure Renard to take action regarding his bonuses, Milican responded:

> I did not want to have a bull's-eye on my back," because "throughout the years, being married with four young children, I could not afford to lose this particular job because at the time my wife was not working. So I decided that I didn't want to be a target . . . is why I never pursued it really, really hard like I am now.

Milican alleges that his fear of retaliation was reinforced by a conversation he had with Barnaby's assistant in the early 2000s in which the assistant told Milican "you don't want to bring this back up because they will come after you." The assistant, however, later told Home Depot that she "was unaware of any purported agreement similar to that alleged by Milican."

About ten years later, Milican told the regional and divisional Human Resources departments that he was concerned about his bonus calculation. Milican asserts that he had several meetings with Renard and Human Resources officials, and that Milican gave Human Resources all of the evidence in his possession. James Bejna, the Senior Director of Human Resources at the time, stated that Milican had a meeting with Renard and Human Resources officials and that Human Resources conducted an investigation. Human Resources was unable to interview Barnaby or access Barnaby's records because Barnaby had left Home Depot in 2002. Human Resources was not able to access the email records of Barnaby, Collins, and several other relevant employees because such records are permanently deleted after the employee's departure. Renard, however, was still employed at Home Depot and told Human Resources that he knew of the alleged action notice and "saw an action notice that was somewhat similar to that alleged by Milican," but Renard did not recall further details.

According to Milican, Human Resources informed him "[t]hat they were not going to be able to do anything because there was not enough there." Milican claims that Human Resources declined to put their decision in writing and would not inform Milican who was responsible for the decision. But Bejna asserted that he personally informed Milican that Home Depot "was ultimately unable to substantiate his assertions" and provided several reasons, including that Milican should have raised the issue eighteen years previously, that none of Milican's evidence referred to the duration of the bonus or the fact that it was allegedly to continue for the rest of Milican's employment, and that Milican was unable to produce the relevant action notice. Milican contends he has been indirectly retaliated against for making his 2019 complaint to Human Resources. Milican claims that Renard told him that Hanlon, who at that point was the president of the division, told the RVP of Milican's area "Fuck him, he's not getting a thing." Renard said that he did not recall hearing about that comment.

The district court granted Home Depot's motion for summary judgment, holding that there was no enforceable contract regarding Home Depot's alleged agreement to pay Milican higher bonuses. *Milican v. Home Depot U.S.A., Inc.*, No. 20-cv-11088, 2021 WL 4635911, at *1 (E.D. Mich. Oct. 7, 2021). The court concluded that there was no consideration to support an enforceable contract because Milican did not promise anything in return for the higher bonuses. *Id.* at *4. Milican argues on appeal that there was consideration—Milican's acceptance of a demotion in exchange for Home Depot's promise to pay him bonuses at the RVP level—and thus that Milican has shown the existence of an enforceable contract that Home Depot breached by failing to pay Milican the RVP-level bonuses.

Even if Milican could establish the existence of a contract, the doctrine of laches prevents Milican from enforcing it due to Milican's nearly two-decade delay in bringing this suit. Laches applies "in cases in which there is an unexcused or unexplained delay in commencing an action and a corresponding change of material condition that results in prejudice to a party." *Pub. Health Dep't v. Rivergate Manor*, 550 N.W.2d 515, 520 (Mich. 1996) (citing *Lothian v. City of Detroit*, 324 N.W.2d 9 (Mich. 1982)). The primary inquiry is whether the plaintiff "fail[ed] to do something that should have been done under the circumstances or fail[ed] to claim or enforce a right at the proper time." *Att'y Gen. v. PowerPick Club*, 783 N.W.2d 515, 535 (Mich. Ct. App. 2010) (citing *Schmude Oil Co. v. Omar Operating Co.*, 458 N.W.2d 659 (Mich. 1990)). Milican's nearly two-decade delay in bringing this suit is a compelling reason to apply the doctrine of laches. Milican learned of the alleged breach in 2000 or 2001, but did not bring this suit until 2020. The length of that delay is particularly inexcusable considering the fact that Milican knew each year that his bonus was below the RVP-level bonus that he claims he was entitled to. Because Milican knew of the breach in 2000 or 2001 and continued to accept lower bonuses each year, Milican waited far too long to bring suit to enforce his alleged right to a higher bonus.

Milican's extended delay in bringing suit also plainly prejudiced Home Depot. Laches differs from the statute of limitations in that laches focuses on the prejudice to the defendant that results from the delay. *See Lothian*, 324 N.W.2d at 14. Michigan courts have concluded that defendants were prejudiced by the undue delay when the passage of time meant that witnesses were unavailable or had diminished recollections. *See Knight v. Northpointe Bank*, 832 N.W.2d 439, 443–44 (Mich. Ct. App. 2013); *Boladian v. Clinton*, No. 277314, 2008 WL 3852155, at *9 (Mich. Ct. App. Aug. 19, 2008). Here, the only two witnesses to the meeting in which Milican was allegedly promised the RVP-level bonuses both left Home Depot before 2010, and their email

7

records have long since been deleted. In fact, Barnaby—who Milican claims led the alleged contract formation—left Home Depot in 2002. Both Milican and Home Depot are unable to locate the 2000 action notice, and given that Milican allegedly kept the action notice in his office for several years in the early 2000s, that action notice could likely have been located if Milican had brought this suit in a timely manner.

Laches can bar Milican's suit even if his claim is within the statute of limitations. Under Michigan law, "laches may bar a legal claim even if the statutory period of limitations has not yet expired."[2] *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 343 (6th Cir. 2018) (quoting *Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 761 N.W.2d 846, 864 (Mich. Ct. App. 2008)); *see also Dep't of Env't Quality v. Gomez*, 896 N.W.2d 39, 54 (Mich. Ct. App. 2016)). In *Innovation Ventures*, we held that a jury could find facts supporting a laches defense when the plaintiff may have become aware of the facts underlying its claim "almost three years before it filed suit." *See* 912 F.3d at 343. In this case, Milican far exceeded that delay, so the statutory period of limitations does not prevent the application of laches here.

On appeal, Milican has failed to respond at all to Home Depot's laches argument, even though the argument was clearly set forth in Home Depot's brief and was also raised below. In the district court, Milican's two-page response to the laches argument was not persuasive. Milican argued that Home Depot also delayed, but it is not clear how such an argument is relevant. In a three-sentence paragraph, Milican also argued that Home Depot was not prejudiced "because there is a sufficient paper trail" and there is "no documentation at all evidencing Milican's assent to the

---

[2] In an earlier opinion concerning Home Depot's motion to dismiss, the district court applied Michigan's six-year statute of limitations for breach of contract claims and barred Milican from recovering for any unpaid bonuses before 2014—six years before he sued in 2020. *See Milican v. Home Depot U.S.A., Inc.*, No. 20-cv-11088, 2020 WL 4001900, at *6 (E.D. Mich. July 15, 2020).

action."  These arguments were slim at best.  Laches thus bars Milican's attempt to enforce a contract that was allegedly entered into in 2000.

We affirm the judgment of the district court.